UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSELL BRANDT,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA CREDIT SERVICES, INC., a Delaware Corporation, WALES & WOEHLER, INC., P.S., a Washington Corporation, JASON L. WOEHLER, WSBA Number 27658, and SACOR FINANCIAL, INC., a California Corporation,<br><br>Defendants. | Case No. C17-703 RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST WALES & WOEHLER, INC., P.S., AND JASON WOEHLER |

This matter comes before the Court on Plaintiff Russell Brandt's Motion for Summary Judgement against Defendants Wales & Woehler, Inc., P.S., and Jason Woehler (collectively "Woehler" or "W&W") as to liability. Dkt. #23. Defendants oppose this Motion. Dkt. #26. For the reasons set forth below, the Court GRANTS Mr. Brandt's Motion.

## I. BACKGROUND[1]

In 2005, Columbia Credit Services ("CCS"), Defendant Sacor Financial, Inc. ("Sacor")'s predecessor, obtained a judgment against Mr. Brandt in King County Superior

---

[1] Defendants Wales & Woehler, Inc., P.S. and Jason Woehler appear to agree to the following background facts, stated in Mr. Brandt's Motion and supported by attached exhibits. *See* Dkt. #26 at 1 ("W&W does not dispute the overall statement of facts provided by plaintiff, except insofar as said statement of facts is incomplete…").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

Court, Case Number 05-2-150410-1 (hereinafter the "Collection Action."). *See* Dkts. #25-1 and #25-2. In October of 2006, Mr. Brandt contacted a CCS collection agent, Justin Lane, and negotiated a final settlement. Dkt. #24 at ¶¶ 4-7; Dkt. #24-1; Dkt. #25-7 at 22. Mr. Lane faxed the settlement agreement to Mr. Brandt, and he paid the settlement amount as instructed by Mr. Lane. *Id.* However, no satisfaction of judgment was filed in the Collection Action.

Despite this payment, CCS and its successors-in-interest continued to send Mr. Brandt collection letters. *See, e.g.*, Dkt. #24 at ¶¶ 9, 11, and 13; Dkts. #24-1 at 7–15. Mr. Brandt repeatedly followed up with the collectors to show them proof he had paid. Dkt. #24 at ¶¶ 10, 12, and 14; Dkt. #25-7 at 29–30.

Sacor purchased Mr. Brandt's account from CCS in 2012, and Defendants Wales & Woehler and specifically Jason Woehler began working for Sacor. *See* Dkt #25-2 at 14. Sacor's account notes show that an assignment of judgment to Sacor was needed to begin garnishment on the judgment, but that getting the assignment would delay garnishment "45-60 days." Dkt. #25-7 at 28–29. Instead of waiting for that process to occur, Woehler filed an Assignment of Judgment to Sacor Financial (hereinafter the "Assignment of Judgment") after just eleven days. Dkt #25-2 at 14.

The Assignment of Judgment was not signed by a Sacor employee. It was signed by Frank G. Huguenin, who was Woehler's Rule 9 Intern. Jason Woehler notarized the Assignment of Judgment, stating:

> I, Jason Woehler, Notary Public in and for the State of Washington, do hereby certify that on this day, Frank Huguenin of SACOR Financial, Inc. personally appeared before me, to me known to be the individual described in and who executed the within instrument and acknowledged that he/she signed the same as a free voluntary act and deed, with full corporate authority, for the uses and purposes herein mentioned.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

*Id.*

Mr. Huguenin did not work for Sacor when Jason Woehler notarized the Assignment of Judgment. Jason Woehler knew that Huguenin did not work for Sacor when he notarized the Assignment of Judgment. These facts have been admitted by Defendants through their failure to respond to Plaintiff's Requests for Admission on these topics. *See* Dkt. #25-9 at 22–23.

On November 9, 2012, Woehler filed an Application for Writ of Garnishment against Bank of America in the Collection Action. Dkt. #25-3 at 1–5. That Application for Writ of Garnishment credited Mr. Brandt only $564.80 for amounts previously garnished. *Id.* Mr. Brandt contacted Woehler just days later and provided the firm proof that he had already paid the debt; Attorney Woehler "responded that he did not believe [Mr. Brandt] and called [him] a liar." Dkt. #24 at 3; *see also* Dkt #25-7 at 29–30.[2] Sacor's own records show Mr. Brandt provided: 1) a copy of the settlement agreement signed by Mr. Lane and on CCS letterhead; 2) a copy of Mr. Brandt's notes from his call with Lane; 3) a receipt for the cashier's check he purchased to settle the debt showing that a cashier's check was purchased by Brandt and made payable to CCS 5280 in the amount of $5,425.20; and 4) a cancelled copy of the cashier's check in the amount of $5,425.20, showing "[p]ay to the order of: CCS 5280," showing the bank endorsement from the deposit, and showing the account number and bank branch the check was deposited in. *See* Dkt. #25-8 at 4–8. "5280" is the account number CCS assigned Brandt's account. *See* Dkt #25-7 at 17. Sacor's records reflect that the records were transmitted to Sacor by "Frank" on November 21, 2012 and Woehler on November 30, 2012. *Id.* at 29.

---

[2] Defendant Woeler does argue in briefing that this allegation is untrue, however Woeler does not cite to any evidence to refute this fact, nor does he mention it in his declaration. In any event, the Court does not consider this fact material to the claims at issue.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

Woehler did not quash the garnishment. Even after Mr. Brandt provided Woehler these documents, $190.17 was garnished from Brandt's BOA Account. Dkt. #25-3 at 7–10. Woehler filed another Application for Writ of Garnishment on November 13, 2013. *Id.* at 11–15.

Woehler then filed a Motion and Order Directing Personal Appearance of Russell Brandt for Examination. Mr. Huguenin, by then a licensed Washington lawyer working for Woehler, appeared for Sacor at the hearing. Brandt appeared *pro se*. Dkt. #25-6 at 3–16 (Verbatim Report of Debtor Examination Proceedings held June 30, 2015).

Mr. Brandt told the court he paid the debt in 2006. *Id*. at 7:11–19. Brandt provided the court with the same documents he had previously provided. *Id*. at 7:11–25, 8:1–4. Brandt testified under oath that he had paid the debt and spoken with Jason Woehler a couple of times on the matter. *Id*. at 7:11–19, 8:10–11. Mr. Huguenin stated at the hearing "[t]his is the first I've actually heard about it," that he had not looked at the documents submitted by Mr. Brandt, and that he had "not been informed by our client that this judgment has been paid." *Id*. at 8:5–6, 8:14–16. The court commented that looking at Brandt's information, it appeared that Sacor had been paid, and the court instructed Huguenin and Brandt to go out into the hall to discuss the matter, because "if it's been paid, it's been paid." *Id*. at 8:24–9:2, 9:8–14.

Instead of stopping his collection efforts, on July 6, 2016, Woehler filed two more Applications for Writs of Garnishment, one against BOA and the other against Boeing Employees Credit Union ("BECU") claiming Brandt owed $16,043.96. Dkt. #25-4 at 2–10. Neither garnishment showed credit for the $764.97 that had been previously garnished from Brandt, or the settlement payment from ten years prior.

The BECU garnishment resulted in $1,490.49 being withheld from Brandt's BECU account. Dkt #25-4 at 12–13. The BOA garnishment resulted in $20.58 being withheld from Brandt's BOA account. *Id.* at 16–17.

On March 1, 2017, Mr. Brandt filed a Motion for an Order to Show Cause and a Motion to Set Aside Default Order and Judgment in the Collection Action. Sacor obtained new counsel and filed a Motion to Continue the Show Cause Hearing, arguing that Sacor had not had adequate time "properly to investigate [Brandt's] allegations." Dkt. #25-4 at 22. Sacor explained that it had submitted a subpoena to JPMorgan Chase, successor-in-interest to Washington Mutual, to figure out into whose account the settlement payment had been deposited. *Id.* The court denied Sacor's request for more time to investigate the matter. Dkt. #25-6 at 18–34 (Verbatim Report of show cause hearing held March 24, 2017).

Chief Judge Beth Andrus, as she vacated the CCS/Sacor judgment, commented as follows:

> "I very, very rarely [vacate a judgment under CR 60(b)(11)]; but if ever there is an extraordinary circumstance to do so, it is this one."
> . . . .[T]here is clear documentation that [Mr. Brandt] was told you can pay off this debt by sending us this money to this address, and he complied. And he's got the documentation to show it, and it was from 2006. And he did raise this with Sacor; and therefore Sacor should have been looking into this last year, if not sooner."

*Id.* at 15:11–16:2.

Weeks after the above-quoted hearing, Sacor received documents in response to its subpoena to JPMorgan Chase. *See* Dkt #25-8 at 10–16. The JPMorgan Chase records show the account Mr. Brandt had deposited the check into as instructed was the personal bank account of Mr. Lane, Sacor's agent and employee. *Id.* The records contained a copy of the cashier's check Brandt provided to Woehler multiple times. *Id.* On December 15, 2017, more than five

years after Woehler appeared, Sacor dismissed the collection action with prejudice after globally settling with Brandt. *See* Dkt. #25-5 at 26.

On March 29, 2017, BECU sent Woehler a letter requesting he provide BECU with a Judgment on Answer, Order to Pay, or Release of Garnishment. Dkt. #25-5 at 20. On July 20, 2017, BECU sent Woehler another request for a Judgment on Answer, Order to pay, or Release Garnishment. Leonard Decl. *Id.* at 23.

None of the documents BECU requested are on file in the Collection Action. To date, Brandt has not received the wrongfully-garnished BECU funds back and has sought relief from the state court. Dkt. #25 at 6.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd*

*on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

Mr. Brandt argues that the above facts demonstrate a violation of the Fair Debt Collection Practices Act ("FDCPA") and Washington State's Consumer Protection Act ("CPA"). Dkt. #23. Mr. Brandt seeks only that the Court find Defendants W&W and Mr. Woehler's liable for these violations, leaving damages to be decided at a later date.

In Response, Woehler essentially blames its client Sacor. *See, e.g.,* Dkt. #26 at 4 ("Sacor has disingenuously misled the superior court as to its knowledge and review of plaintiff's allegations of payment."). Woehler argues that at all times it complied with the requests of its client, and that it specifically "provided Sacor with the exculpatory documents provided by plaintiff to Sacor, and was advised that said documents did not provide sufficient proof to Sacor that the matter had been settled and paid." *Id*. at 1–2. Woehler argues that "plaintiff is attempting to tax W&W with damages that, if they exist at all, exist from Sacor's refusal to either fully investigate plaintiff's claim of settlement, or to willfully ignore said claim." *Id*. at 4. Woehler concludes by stating it "relied upon Sacor to investigate the payment alleged, as W&W had no access to any method to verify the same." *Id*. at 6. Woehler does not address Mr. Brandt's CPA claim.

In Reply, Mr. Brandt argues that Woehler has failed to demonstrate a genuine dispute over material facts, and that the record disproves some of Woehler's factual claims. Specifically, Mr. Brandt reiterates that "Woehler's own documents show Brandt provided proof, directly to Woehler on November 16, 2012, years before the 2015 Debtor Examination,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

showing that Brandt had settled the debt." Dkt. #28 at 3 (citing Dkt. #25-8). Mr. Brandt argues that a "bona fide error" defense does not apply to debt collectors that unreasonably rely on their client's representations. *Id.* at 5 (citing *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1005-06 (9th Cir. 2008); *id.* at 6 (citing *Clark v. Capital Credit & Collections Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable.")). Mr. Brandt argues that *Clark* does not shield Woehler from liability for actions outside the initial notice stage of debt collection. *Id.* Mr. Brandt cites *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) for the proposition that collection attorney can violate the FDCPA when they violate their own policies in blind reliance on their client's assertions. *Id.* at 7.

The Court begins by noting that Woehler's response brief repeatedly makes factual statements without citations, or cites generally to "Exhibits to declaration of Frank Huguenin." Pursuant to the Local Civil Rules, parties must support factual assertions with a citation to the record, including a pin cite to the relevant page or pages. *See* LCR 10(e)(6) ("In all cases where the court is to review the proceedings of an administrative agency, transcripts, deposition testimony, etc., the parties shall, insofar as possible, cite the page and line of any part of the transcript or record to which their pleadings, motions[,] or other filings refer."); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."); *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'") (internal citation

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (internal citation omitted); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The Court will first address Mr. Brandt's FDCPA claim. The purpose of the FDCPA is the elimination of abusive debt collection practices by debt collectors and the promotion of consistent state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692. Accordingly, the statute prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Without limiting the general application of this rule, the statute also enumerates sixteen specific examples of conduct that would be considered use of false or misleading representation and therefore would violate the statute as a matter of law. *Id*.

The test for determining whether a debt collector violated the FDCPA is objective and does not depend on whether the debt collector intended to deceive or mislead the consumer. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Instead, the "least sophisticated" debtor standard applies, and the liability analysis turns on whether a debt collector's communication would mislead an unsophisticated but reasonable consumer. *Id*. Debt collectors are held strictly liable for any violations under the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). A debt collector cannot blindly rely on its client to avoid liability under the FDCPA: "The fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was

reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." *Reichert*, 531 F. 3d at 1007.

The Court finds that the FDCPA applies here as both Woehler the firm and Woehler the person were debt collectors as defined by statute. The Court agrees with Mr. Brandt that Woehler violated §1692e of the FDCPA by engaging in unfair and deceptive collection methods and seeking to collect amounts not legally due. The facts above, generally agreed to by Woehler, clearly demonstrate this conclusion. A reasonable investigation by Woehler would have revealed that Mr. Lane settled the debt while acting as Sacor's agent, and that pursuing the debt, even at their client's behest, was in violation of the FDCPA. The Court finds that Woehler is liable under the FDCPA.

A private CPA action consists of the following elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The Court finds that Woehler has violated the CPA by violating the FDCPA in this case. *See Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 43, 204 P.3d 885 (2009). Mr. Brandt was injured in his business or property. *See Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). Accordingly, Woehler is liable under the CPA.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Plaintiff Russell Brandt's Motion for Summary Judgement against Defendants Wales & Woehler, Inc., P.S. and Jason Woehler (collectively "Woehler" or "W&W") as to liability under the CPA and FDCPA, Dkt. #23, is GRANTED.

2) Plaintiff may proceed to trial on the issue of damages.

DATED this 12th day of April 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE